UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| THE CENTER FOR FOOD SAFETY, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 04-1324 (RMU) |
| | : | | |
| v. | : | Document Nos.: | 8, 13 |
| | : | | |
| UNITED STATES DEPARTMENT OF AGRICULTURE, and ANN M. VENEMAN, Secretary of the United States Department of Agriculture, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

GRANTING IN PART AND DENYING IN PART THE PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT;
GRANTING IN PART AND DENYING IN PART THE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

**I.  INTRODUCTION**

This matter comes before the court on the parties' cross motions for summary judgment. The plaintiff, the Center for Food Safety ("CFS"), brings suit under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq*. and moves for summary judgment on the grounds that the defendants failed to release public records pursuant to CFS's FOIA request and improperly denied CFS's fee-waiver request.  In their cross motion for summary judgment, the defendants claim that the plaintiff was not entitled to a fee waiver and that adjudication of the merits of the underlying FOIA request is premature.  Because the defendants improperly denied the plaintiff's fee-waiver request, the court grants summary judgment to the plaintiff on the fee-waiver issue. Because the plaintiff has not exhausted its administrative remedies on any dispute regarding the

merits of its FOIA request, however, the court declines to rule on the merits of the FOIA request. Accordingly, the court grants in part and denies in part both parties' motions for summary judgment.

## II.  BACKGROUND

CFS is a non-profit public interest organization committed to protecting human health and the environment.  Pl.'s Mot. Summ. J. ("Pl.'s Mot.") ¶ 1.  CFS focuses its efforts on "understanding and sharing information about harmful food technologies, and promoting organic and other forms of sustainable agriculture."  *Id.*  CFS achieves its goals in part by "analyzing information from, policy decisions of, and applications for organic certifying accreditation[.]"  *Id.*

On June 26, 2002, CFS sent the defendants a FOIA request for, *inter alia*, documents with information on the manner in which the United States Department of Agriculture ("USDA") uses applications for accreditation under the requirements of the National Organic Program.  *Id.* ¶ 3.  CFS also sought a fee waiver for the processing of its FOIA request.  *Id.*  The defendants denied CFS's request for a fee waiver, stating that, although CFS did not qualify for a mandatory fee waiver, the defendants would be willing to consider a voluntary fee waiver if CFS narrowed its FOIA request.  *Id.* ¶ 4.  CFS administratively appealed the mandatory fee waiver denial; the defendants prevailed.  *Id.* ¶¶ 5-6.

In May 2003, after losing the administrative appeal, CFS followed the defendants' earlier suggestion and narrowed the scope of their FOIA request.  *Id.* ¶ 7.  CFS's new, narrower request also sought a fee waiver.  *Id.*  In March 2004, the defendants denied CFS's new request for a fee

waiver and informed CFS that it would have to pay for the documents it sought, assuming a FOIA exemption or exclusion did not prevent disclosure of those documents. *Id.* ¶ 12; Defs.' Mot. Summ. J. ("Defs.' Mot.") at 10-11 (citing exhibits indicating that the defendants were not addressing the merits of the FOIA request). Again, CFS administratively appealed. *Id.* ¶ 13. In May 2004, the defendants denied the appeal, stating that CFS's request for a fee waiver failed to demonstrate that the information CFS requested would contribute to the "public understanding," the third prong of the fee waiver test pursuant to 7 C.F.R. Pt. 1, Subpt. A, App. A, § 6(a)(1). *Id.* ¶ 14. CFS filed the instant suit in August 2004.

### III.  ANALYSIS

#### A.  Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.

*Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.  *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993).  Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor.  *Greene*, 164 F.3d at 675.  If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

### B.  Legal Standard for Fee Waivers Under FOIA

FOIA allows an agency to charge fees for searching, copying, and reviewing files.  5 U.S.C. § 552(a)(4)(A).  Under 5 U.S.C. § 552(a)(4)(A)(iii), an agency may grant a fee waiver "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  5 U.S.C. § 552(a)(4)(A)(iii).  Courts review administrative fee-waiver decisions *de novo* and limit the review to the record before the agency.  5 U.S.C. § 552(a)(4)(A)(vii).

FOIA requires that agencies publish their own procedural regulations regarding fee waivers.  5 U.S.C. § 552(a)(4)(A)(i).  Pursuant to this requirement, the defendants published rules regarding fee waivers.  7 C.F.R. Pt. 1, Subpt. A, App. A, § 6(a)(1).  These rules state that agencies should consider the following six factors in determining whether to waive fees:

> (i) The subject of the request, i.e., whether the subject of the requested records concerns "the operations or activities of the government";
> (ii) The informative value of the information to be disclosed, i.e., whether the disclosure is "likely to contribute" to an understanding of government operations or activities;
> (iii) The contribution to an understanding of the subject by the general public likely to result from disclosure, i.e., whether disclosure of the requested information will contribute to "public understanding";
> (iv) The significance of the contribution to public understanding, i.e., whether the disclosure is likely to contribute "significantly" to public understanding of government operations or activities;
> (v) The existence and magnitude of a commercial interest, i.e., whether the requester has a commercial interest that would be furthered by the requested disclosure; and
> (vi) The primary interest in disclosure, i.e., whether the magnitude of the identified commercial interest of the requester is sufficiently large, in comparison with the public interest in disclosure, that disclosure is "primarily in the commercial interest of the requester."

*Id.*

The party requesting a fee waiver has the burden of demonstrating that the waiver is appropriate.  *Judicial Watch, Inc. v. Dept. of Justice*, 365 F.3d 1108, 1126 (D.C. Cir. 2004).  Fee waiver requests must be made with "reasonable specificity," *Larson v. C.I.A.*, 843 F.2d 1481, 1483 (D.C. Cir. 1988), and must be based on more than "conclusory allegations," *Nat'l Treasury Employees Union v. Griffin*, 811 F.2d 644, 647 (D.C. Cir. 1987).  Finally, the D.C. Circuit has instructed that courts should liberally construe the FOIA in favor of fee waivers for noncommercial requesters.  *Judicial Watch v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (citations omitted).

**C. CFS Demonstrates that Disclosure Likely Will Contribute to Public Understanding**

The defendants focus their fee-waiver argument on the plaintiff's alleged failure to satisfy the third prong (contribution to public understanding) of the six prong test in 7 C.F.R. Pt. 1, Subpt. A, App. A, § 6(a)(1). Defs.' Mot. at 6. The defendants correctly maintain that the "requester must state how and to whom it intends to effectively disseminate the information it has requested." *Id.* (citing *Rossotti*, 326 F.3d 1309). The defendants then contrast CFS's target audience of 3,500 members with the much larger audience the D.C. Circuit found satisfactory for effective dissemination in *Rossotti*. 326 F.3d at 1314 (referring to, *inter alia*, the requester's– Judicial Watch's–newsletter with a monthly circulation of over 300,000 copies nationwide; a website that had logged up to 1,000,000 visitors in a single day; and an "Infonet" listserve with over 60,000 subscribers). Thus, as the defendant concludes, CFS cannot demonstrate its ability "to disseminate the material requested to a reasonable segment of the general public." Defs.' Mot. at 7.

As indicated above, this court will review the administrative fee-waiver decision *de novo* and limit itself to the record before the agency. 5 U.S.C. § 552(a)(4)(A)(vii). As CFS stated in its fee-waiver justification,

> [t]he information received by CFS in response to this FOIA [request] will contribute to the public understanding of the organic accreditation and certification review process. Under [the third prong] of the fee waiver analysis, a relevant inquiry is "whether requester will disseminate the disclosed records to a reasonably broad audience of persons interested in the subject." *Carney v. Dept. of Justice*, 19 F.3d 807, 814 (2d Cir. 1994). CFS expects the information requested will provide CFS and the greater public with a deeper understanding of the government activities surrounding organic agriculture issues. CFS will distribute its analysis and review of the documents to its membership of over 3,500 and a captive audience of over 93,000 individual members of the public. This will be accomplished through its informative journal Food Safety Review, direct mail pieces and its website

www.centerforfoodsafety.org.

Pl.'s Mot. Ex. A, at 3; *see also id.* Ex. C (providing the same justification); *id.* Ex. M, at 1-2 (same; also noting that the plaintiff's web site receives thousands of visitors per month and that the plaintiff engages in public testimony, media interviews, and publishes policy pieces).

True, CFS may not have the distribution capabilities of Judicial Watch. *See Rossotti*, 326 F.3d at 1314. But the defendants' insistence on comparing the facts of this case to *Rossotti* places too great a burden on a party requesting a fee-waiver. As the court stated in *Rossotti*, "Judicial Watch has explained, in detailed and non-conclusory terms–again, all that FOIA requires–exactly how and to whom it will disseminate the information it receives." 326 F.3d at 1314. CFS has done the same: it states that it will distribute the information to its members and to a larger "captive audience" through its journal, direct mail, and its website. Pl.'s Mot. Ex A (June 26, 2002), at 3. Although, as the defendants argue, CFS could have elaborated what constitutes its "captive audience," this omission is not dispositive. *Cf. Carney v. Dept. of Justice*, 19 F.3d 807, 814-15 (2d Cir. 1994) (rejecting the argument that a graduate student would not significantly contribute to the public's understanding because his dissertation, scholarly articles, college classes, panels and conventions, and tentative book "would not reach a large enough audience"; noting that "[i]nformation need not actually reach a broad cross-section of the public in order to benefit the public at large"; and focusing on "whether the requester will disseminate the disclosed records to a reasonably broad audience of persons interested in the subject"); *Larson v. C.I.A.*, 843 F.2d 1481, 1483 (D.C. Cir. 1988) (upholding denial of a fee waiver where the requester "failed to identify the newspaper company to which he intended to release the requested information, his purpose for seeking the requested material, or his professional or

personal contacts with any major newspaper companies").

The defendants have not challenged CFS's status as a non-profit public interest organization committed to protecting human health and the environment through, at least in part, "sharing information about harmful food technologies" and "analyzing information from, policy decisions of, and applications for organic certifying accreditation[.]" Pl.'s Mot. ¶ 1. These applications, of course, are the subject of CFS's FOIA request. *Id.* ¶ 3. In light of CFS's detailed and non-conclusory description of how and to whom it will disseminate the information and CFS's representations regarding its institutional goals, the court has no reason to doubt that CFS will disseminate to a reasonably broad audience interested in the subject-matter of its FOIA request. *Rossotti*, 326 F.3d at 1314; *Carney*, 19 F.3d at 814-15. The plaintiffs thus satisfy 7 C.F.R. Pt. 1, Subpt. A, App. A, § 6(a)(1)(iii). Accordingly, because the defendants only challenge the plaintiff's fee waiver eligibility under 7 C.F.R. Pt. 1, Subpt. A, App. A, § 6(a)(1)(iii), the court grants summary judgment to the plaintiff and denies summary judgment to the defendants on this issue.

### D. The Court Declines to Rule on the Merits of the Underlying FOIA Request

CFS argues that, fee waivers aside, CFS is entitled to the information it sought in its FOIA request. Pl.'s Mot. at 6. The defendants respond that they have "maintained throughout the administrative process that [they were] resolving the issue of fee waiver before any determination on the appropriate withholding and releasability of the records." Defs.' Mot. at 10. The defendants further argue that the underlying FOIA request "is not yet ripe for processing because there has been no compliance with the fee requirements of the FOIA." *Id.* at 11 (citing 5 U.S.C. § 552(a)(3)).

In the FOIA context, the exhaustion requirement is a prudential consideration, not a jurisdictional prerequisite, and therefore a plaintiff's failure to exhaust does not deprive the court of subject-matter jurisdiction. *Wilbur v. Cent. Intelligence Agency*, 355 F.3d 675, 677 (D.C. Cir. 2004) (quoting *Oglesby v. United States Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)). But as a prudential consideration, the exhaustion requirement may still bar judicial review if both (1) the administrative scheme at issue and (2) the purposes of exhaustion support such a bar. *Id.* (citing *Hidalgo v. Fed. Bureau of Investigation*, 344 F.3d 1256, 1258-59 (D.C. Cir. 2003)). With regard to the first factor, the D.C. Circuit has concluded that FOIA's administrative scheme supports barring judicial review. *Id.* (citing *Hidalgo*, 344 F.3d at 1259). As for the second factor, courts look to see whether barring judicial review would "prevent[] premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review." *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975); *see also Hidalgo*, 344 F.3d at 1259 (applying the *Weinberger* description of the purpose of exhaustion in the FOIA context).

The court appreciates CFS's concerns regarding the impact of fee-waiver disputes on the timely processing of FOIA requests. *See* Pl.'s Reply at 6-7. Nevertheless, it is undisputed that the defendants have not yet considered CFS's FOIA request beyond the question of who will pay for it. In light of the above discussion of exhaustion requirements and the lack of any administrative review of the merits of the plaintiff's FOIA request, the court concludes that the plaintiff must first exhaust its administrative remedies before litigating its underlying FOIA request in this court. Accordingly, the court denies the plaintiff's motion for summary judgment

on this issue without prejudice.

## IV.  CONCLUSION

For the foregoing reasons the court grants in part and denies in part the plaintiff's motion for summary judgment and grants in part and denies in part the defendants' motion for summary judgment.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued on this 7th day of February, 2005.

RICARDO M. URBINA
United States District Judge